In the United States District Court
for the District of Kansas
_____

Case No. 23-cv-04111-TC
_____

Tammy A. Von Busch,

*Plaintiff*

v.

Patricia Giordano,
Geary County, Kansas, Board of Commissioners,

*Defendants*
_____

**MEMORANDUM AND ORDER**

Plaintiff Tammy A. Von Busch sued her former employer, the Board of Commissioners of Geary County, Kansas, alleging her termination violated her federal and state constitutional rights. Doc. 7. The Board moved to dismiss all claims against it under Fed. R. Civ. P. 12(b)(6). Doc. 11. For the following reasons, the Board's motion is granted.

**I**

**A**

A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts

as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 589 U.S. 327, 332 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation with multiple defendants).

Ordinarily, a motion to dismiss is decided on the basis of the pleadings alone. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). But a "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019).

**B**

In 2017, the Board hired Von Busch as Director of Geary County's Health Department. Doc. 7 at ¶ 11.[1] For several years, Von Busch's annual evaluations positively characterized her performance. *Id.* at ¶ 12. They explained that she built relationships in the commu-

---

[1] All references to the parties' briefs are to the page numbers assigned by CM/ECF.

nity, conducted outreach with organizations, decreased agency turnover, maintained grant funding, kept expenses low, and was "a good leader for the Health Department." *Id.* Von Busch alleges that this positive environment changed for her when Patricia Giordano joined the Board in 2021. *Id.* at ¶ 13.

Von Busch had several concerns about Giordano's behavior. *Id.* at ¶ 14. In particular, she felt that Giordano did not allocate sufficient funding to the Health Department or provide adequate support during the COVID-19 pandemic. *Id.* At some point, Von Busch heard that the Board was planning to close the Health Department. *Id.* at ¶ 15.

Von Busch began to tell others about her concerns. She expressed "in both public forums and private social settings" that she was unhappy with "how issues were being handled by the Board." *Id.* at ¶ 16. Those issues included Giordano's conduct and the rumor that the Board was closing the Health Department. *Id.* at ¶ 17. Von Busch also voiced her discontent at the Board's monthly meeting in September 2021. *Id.* at ¶ 19. At that meeting, she "expressed her concerns related to the rumored closing of the Health Department." *Id.* She alleges that "Giordano became aggressive and combative, chastising Plaintiff for voicing her concerns at the public meeting." *Id.* Von Busch contends that she "began to experience retaliatory behavior from Giordano in the form of harassing emails, disparaging comments about Plaintiff and her department to the public, and combative communication with Plaintiff." *Id.* at ¶ 20. Still, she continued to "express[ ] her concerns related to Giordano's fitness for office based on her troubling behavior to the public at large in both public settings and private social settings." *Id.* at ¶ 21. Soon after, Von Busch received a Notice of Disciplinary and/or Corrective Action, which stated that she had engaged in "fighting or creating conflict," "rudeness," and "spreading gossip." Doc. 7 at ¶¶ 22–23.

A couple months later, Von Busch received her annual performance evaluation. Doc. 7 at ¶ 23. The Board evaluated Von Busch as lacking "constant, complete communication" and "appropriate leadership." *Id.* It also stated she was "not addressing good judgment in addressing a rumor" with the Board. *Id.* That same day, the Board fired Von Busch. *Id.* Von Busch then filed this lawsuit against the Board, alleging that her termination violated her free-speech rights under the U.S. and Kansas Constitutions. Doc. 7. She brings her federal claims by way of 42 U.S.C. § 1983, Doc. 7 at 5, and her state

claims allege a violation of the "public policy tort" of retaliatory discharge, *id.* at 7.

## II

Th Board has moved to dismiss both Von Busch's federal constitutional claim and state-law claims. Doc. 11. Each claim fails to state a claim upon which relief may be granted. As a result, the Board's motion is granted.

## A

Von Busch asserts she was terminated in retaliation for speech protected by the First Amendment. Doc. 7 at ¶ 5. In particular, she contends that the Board retaliated against her for expressing concerns about a Board member's conduct and a rumor that the Health Department was closing. *See generally* Doc. 7.

The First Amendment guarantees that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people . . . to petition the Government for a redress of grievances." U.S. CONST. amend. I. Although "public employees do not surrender all their First Amendment rights by reason of their employment," their rights are more circumscribed, *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006), and governmental employers have an important interest in maintaining an efficient workplace, *see id.* (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 568 (1968)); *see also Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 599 (2008) (recognizing a government acting as an employer has greater leeway to manage employee conduct than to proscribe conduct for citizens at large).

To balance these competing interests, *Garcetti* and *Pickering* identified five considerations that illuminate the line between permissible employee management and improper stifling of private speech. *See Butler v. Bd. of Cnty. Comm'rs*, 920 F.3d 651, 655 (10th Cir. 2019). The *Garcetti/Pickering* test asks whether: (i) the speech was made pursuant to an employee's official duties; (ii) the speech was on a matter of public concern; (iii) the government's interests, as an employer, in promoting the efficiency of its public services are sufficient to outweigh the employee/citizen's free speech interests; (iv) the protected speech was a motivating factor in the adverse employment action; and (v) the employer would have reached the same employment deci-

sion in the absence of the protected conduct. *Id.* (quoting *Bailey v. Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1181 (10th Cir. 2018)). The first three elements contain questions of law for the court, while the remaining two prongs are questions of fact for the jury. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009).

The Board seeks dismissal because Von Busch's expressive conduct was undertaken in her official capacity as Director of the Health Department.[2] *Id.* at 4–7. As noted, the first prong of *Garcetti/Pickering* asks whether "the employee spoke 'pursuant to [her] official duties.'" *Hesse v. Town of Jackson*, 541 F.3d 1240, 1249 (10th Cir. 2008) (quoting *Garcetti*, 547 U.S. at 421). Courts take "a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1204 (10th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 422). Specifically, the focus is on "the *context* of the speech." *Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1138 (10th Cir. 2024) (emphasis in original). As a result, it is necessary to examine both Von Busch's expressions and what her official duties entailed. *See, e.g.*, *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1133–35 (10th Cir. 2024).

The allegations suggest a match between the expressions Von Busch identifies and the tasks she was paid to perform. In particular, Von Busch alleges that she expressed concerns "to the public at large in both public forums and private social settings." Doc. 7 at ¶¶ 16, 17, 28, 35. These concerns focused on Giordano's inadequate support of the Health Department and treatment of community members, and a rumor that the Board intended to close the Health Department. *See id.* at ¶¶ 14, 18. While Von Busch does not specifically identify her official duties, she describes previous performance evaluations that she received. *See id.* at ¶ 12. Those evaluations described her ability to build relationships in the community, conduct outreach with organizations, secure and maintain grant funding, "keep[ ] expenses low", and lead the Health Department's operations. *Id.* Based on those descriptions, Von Busch has not overcome the "heavy bar-

---

[2] The Board also argues that Von Busch's expressive conduct involved a matter of private, internal concern, which the First Amendment does not protect. Id. at 7–8. Given the resolution on the first prong, it is unnecessary to reach the Board's second argument that Von Busch did not speak about a matter of public concern.

rier" that *Garcetti's* official-duty rule creates. *Tufaro*, 107 F.4th at 1138 (explaining that the official-duty inquiry takes "a broad view of the meaning of speech that is pursuant to an employee's official duties," focusing on the overall context of the speech).

Controlling precedent supports this conclusion. In *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708 (10th Cir. 2010), the Director of Santa Fe's Division of Senior Services opposed various changes to her division's budget and believed they violated federal law. *Id.* at 710–11. At a banquet hosted by her division, she told a state representative that she was "worried about the funding" and opined that the proposed budget cuts violated federal law. *Id.* Sometime later, she was demoted. *Id.* The Tenth Circuit held that Chavez-Rodriguez's speech was not entitled to First Amendment protection because she spoke pursuant to her official duties. *Id.* at 716. Under the totality of the circumstances, her speech was official-duty speech because her employer sponsored the event, it occurred during work hours, and she attended in her capacity as Director. *Id.* at 714. And even though she spoke with the state representative as a friend, the "content of the speech indicate[d] the conversation was more akin to a work discussion between two public officials than small talk at a party." *Id.*

Von Busch's speech is similar to the unprotected speech in *Chavez-Rodriguez.* Von Busch spoke at a monthly meeting hosted by her employer—the Board. *See* Doc. 7 at ¶ 28. She expressed her concerns to the Board itself and the public. *Id.* Her expressions concerned the Health Department's funding and how the Board's or Giordano's conduct could influence the department's operations. *Id.* This is speech akin to a health center director speaking with the public or a county board about issues concerning her department's operations. *See Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 749 (10th Cir. 2010) (explaining that a medical professional's complaints about patients' inadequate care was official-duty speech). Even if she was also speaking as a citizen concerned with the county's funding of the health department, the totality of the facts Von Busch alleged suggests that she was speaking pursuant to her role as Director of the Health Department. *See McNellis*, 116 F.4th at 1135 (holding that a teacher's speech was unprotected at the 12(b)(6) stage even though he also self-identified as a concerned parent when he spoke because "the substance and context of his speech in the totality" showed that he spoke as a school employee).

Von Busch's attempt to distinguish *Chavez-Rodriguez* is unpersuasive. She argues that unlike Chavez-Rodriguez, she did not speak at an event hosted by the Health Department, during work hours, or in her capacity as Director. Doc. 16 at 6. But Von Busch did not plead any of these facts. She simply repeated the conclusory allegation that she spoke in her "private, individual capacity" and in "private social settings." *See* Doc. 7 at ¶¶ 16, 17, 21, 28, 35. And those conclusory statements will not do. *See Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (finding that generic allegations reciting the elements of a cause of action are insufficient to state a claim for relief).

Von Busch attempts to sidestep this bar to her claim by suggesting that she also made these comments in "private settings." Doc. 16 at 5–6 (citing Doc. 7 at ¶¶ 7, 14, 16, 21). But the Complaint does not allege facts describing what these statements were, how—if at all—they differed from the public statements, or to whom they were made. As a result, she has not met her burden to plead that she spoke outside of her official government duties when she expressed her concerns. *See McNellis*, 116 F.4th at 1134–35 (finding an employee did not allege facts meeting his burden to plead that he spoke outside of his official duties when the specific facts he alleged showed he spoke to his co-workers and supervisors about topics that related to "precisely the sort of thing he was paid to do"); *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (explaining that a plaintiff must offer specific factual allegations that plausibly allege the elements of a claim).

And neither *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323 (10th Cir. 2007), nor *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192 (10th Cir. 2007), support her claim. *Contra* Doc. 16 at 5–6. In both cases, employees engaged in protected speech that they made to individuals outside of their chain of command and in non-work settings. *Casey*, 473 F.3d at 1334; *Brammer-Hoelter*, 492 F.3d at 1204. But those facts were part of a greater context showing that the employees spoke outside of their official duties. Take *Casey*, for example, some of the employee's speech was protected because it was unrelated to her governmental duties, not simply because she expressed concerns outside of her command. *See Casey*, 473 F.3d at 1334. In fact, the other speech the employee made that was related to the program that the employee led was not protected by the First Amendment because she made the speech pursuant to her official duties. *Id.*

*Casey* does not aid Von Busch because the only speech she identifies relates to her governmental obligations.

So, too, with *Brammer-Hoelter*. The Tenth Circuit held in that case that teachers' speech was protected because they spoke at a private location, outside of school hours, and about matters that they did not have a duty to report nor over which they had supervisory responsibility. *Brammer-Hoelter*, 492 F.3d at 1204–05. Unlike those teachers, Von Busch was charged with running the Health Department, conducting outreach with the public, managing expenses, and leading employees. *See* Doc. 7 at ¶ 12. Her speech, which focused on the Health Department's funding and a Board member's impact on that funding, is directly related to the job she was "paid to do." *Brammer-Hoelter*, 492 F.3d at 1203. Her allegations that she made this speech in multiple settings, some of which are private, or that she made it in a personal capacity, are conclusory labels on her speech that contradict the case-by-case analysis that *Garcetti* requires. *See Lincoln v. Maketa*, 880 F.3d 533, 538–39 (10th Cir. 2018) (describing the "practical," "case-by-case" inquiry governing whether employees are speaking pursuant to their official duties).

## B

Von Busch also brings a state-law claim under Kansas tort law. Doc. 7. She alleges that the Board retaliated against her for engaging in speech protected by the Kansas Bill of Rights in violation of Kansas public policy. *Id.* at 7. Two independent bases require dismissal.

**1.** Under Kansas law, a plaintiff must provide notice before he or she sues a Kansas county or its employees. K.S.A. § 12-105b(d). Kansas courts treat this requirement as jurisdictional. *See Whaley v. Sharp*, 343 P.3d 63, 67 (Kan. 2014) (recognizing that notice "is required before a court has subject matter jurisdiction over a tort claim against a municipality"). To establish jurisdiction, the plaintiff must plead that he or she complied with that requirement in the Complaint. *See, e.g.*, *Wanjiku v. Johnson Cnty.*, 173 F. Supp. 3d 1217, 1236 (D. Kan. 2016) (explaining that Kan. Stat. Ann. § 12-105b's notice requirement is a condition precedent to filing suit against a municipality that must be pled under Fed. R. Civ. P. 9(c)).

Von Busch disputes that she failed to comply with Kansas's notice requirement before filing suit. Instead, she asserts that she actually complied with the statute (by sending notice to the county clerk on

March 9, 2022) and simply failed to make that allegation in the Complaint. Doc. 16 at 8–9. That will not do. *Hayes v. Whitman*, 264 F.3d 1017, 1025–26 (10th Cir. 2001) (recognizing allegations of fact in a response cannot cure a deficiency in a complaint); *see also Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 896 (10th Cir. 2010) (affirming dismissal based on failure to plead a state-law condition precedent when the plaintiff did not properly request such relief by moving to file an amended complaint).[3]

**2.** Even if Von Busch had sought leave to amend (or had alleged compliance with K.S.A. § 12-105b in the original Complaint), the claim fails as a matter of law. The reason is because Kansas law immunizes governmental entities from liability for money damages if a private entity would not be liable for such relief. *Prager v. State, Dep't of Revenue*, 20 P.3d 39, 54 (Kan. 2001) (citing K.S.A. § 75-6103(a)). And Kansas law does not recognize the cause of action Von Busch is attempting to assert: a public employee who is allegedly terminated in retaliation for speech protected by the First Amendment or the Kansas Bill of Rights. *Id.* at 63–64.(noting the plaintiff "has failed to cite any Kansas case permitting a private person or entity to be found liable for money damages for interfering with someone's right of free speech under either the United States or Kansas Constitutions.") As a result, her state-law claim fails as a matter of law. *See Wilkerson v. Shinseki*, 606 F.3d 1256, 1268 (10th Cir. 2010) (affirming denial of leave to amend when any attempt to amend the complaint would be futile); *see also Youngblood v. Qualls*, 308 F. Supp. 3d 1184, 1199 (D. Kan. 2018) (applying *Prager* and reaching the same result).

Von Busch claims *Larson v. Ruskowitz*, 850 P.2d 253 (Kan. 1993), holds otherwise. Doc. 16 at 10. It does not. The Kansas Supreme Court has directly rejected that argument. *Prager*, 20 P.3d at 63 (explaining that *Larson* provides no authority on the viability of a claim alleging a constitutional free-speech violation because it did not analyze a constitutional claim).

---

[3] Von Busch contends that the Board's motion to dismiss should be treated as one for summary judgment because the Board relied on material outside the pleadings. Doc. 16 at 9–10. That material was not considered. As a result, her request is denied.

## III

For the foregoing reasons, the Board's Motion to Dismiss, Doc. 11, is GRANTED.

It is so ordered.

Date: January 17, 2025                  s/ Toby Crouse
                                         Toby Crouse
                                         United States District Judge